IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-702-FL

| | |
|---|---|
| LINDA MURRAY, )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-24, -26] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Linda Murray ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied and Defendant's Motion for Judgment on the Pleadings be granted, upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on June 21, 2009, alleging disability beginning December 19, 2004. (R. 12, 57-58). Both claims were denied initially and upon reconsideration. (R. 12, 57-62). A hearing before the Administrative Law Judge ("ALJ") was held on February 11, 2011, at which Claimant was represented by counsel and a

vocational expert ("VE") appeared and testified. (R. 24-56). On April 21, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 9-19). On August 30, 2012, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court, seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges (1) the ALJ's credibility analysis and resulting RFC are not supported by substantial evidence; and (2) the ALJ erred in assessing the medical opinion of a treating source. Pl.'s Mem. [DE-25] at 8-12.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 14-19). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 14). Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus and autoimmune pancreatitis. *Id.* At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14-15).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with additional limitations (i.e., stand and/or walk two hours, sit for six hours out of eight-hour day; push and pull within limits given; occasionally climb ramps and stairs, no climbing ladders, ropes and scaffolds; occasionally balancing, stooping, kneeling, crouching, crawling; occasional reaching overhead bilaterally due to stress placed on abdomen; avoid concentrated exposure to hazards, such as heights or machinery; and as result of pain, only perform simple, routine, repetitive tasks). (R. 15-17). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 16).

At step four, the ALJ concluded that Claimant could not perform the requirements of her past

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

relevant work. (R. 17). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 17-18). Accordingly, the ALJ determined Claimant has not been disabled at any time from the alleged onset date through the date of decision. (R. 18).

**B.    Claimant's Testimony at the Administrative Hearing**

At the time of the administrative hearing, Claimant was 47 years old, unemployed, and living in her sister's home with her sister and three youngest of Claimant's seven children, ages six, twelve, and nineteen. (R. 17, 29). Claimant has a high school education. (R. 30). She last worked in 2004 as a food server at a developmental center and previously worked as a sales associate at a retail store, a midwife assistant, a doula, and a hospital patient care assistant. (R. 31-33).

Claimant initially stopped working after she gave birth to her youngest child, and approximately two months later began to experience stomach pains. (R. 33). In September 2005, Claimant sought care at Long Island College Hospital in New York, where Claimant was living at the time. (R. 191-201). A benign, inoperable mass was discovered on Claimant's pancreas, and she was diagnosed with pancreatitis. (R. 34). Claimant explained that the mass continues to grow and that the protrusion appearing to be her stomach is actually her pancreas. *Id.* Claimant's bile duct required stenting every three months, but the doctor did not replace the stents the last time they were removed to determine if the bile duct would stay open independently. (R. 38, 47-48). As a result of the pancreatitis, Claimant developed diabetes and high blood pressure and experiences constant abdominal pain and frequent diarrhea. (R. 35). Claimant takes pain medicine, which causes nausea, vomiting and drowsiness, and also takes anti-nausea medication. (R. 35, 41). Claimant's condition

5

prevented her from returning to work and she moved in with her sister due to lack of income. (R. 35-36).

Claimant returned to the hospital in 2006 for pain management and then again two years later. (R. 46). She moved with her sister to North Carolina and did not resume treatment until 2009. *Id.* Claimant explained there was a gap in treatment because she knew the treatment providers would only increase her pain medication and could not do anything else for her, so there was no need to keep going to the hospital. (R. 36). Claimant stated that when she has severe pain from her pancreatitis she takes Percocet or Oxycodone and lies in bed in the fetal position with a heating pad until the pain resolves, usually in four to five days. (R. 36-37, 39). The pain medication does not relieve her pain, but makes her sleep so that she does not know she is in pain. (R. 39). Claimant cannot sit back in a chair and must lean forward due to pain and the weight of her pancreas, and she cannot tie her shoes due to pain when she bends over. (R. 43-45).

Claimant experiences pancreatic episodes only once in a good month, but often all of the time and had been to the hospital eight or nine times in the two years prior to the administrative hearing. *Id.* Claimant requires help from her daughter to use the restroom during these episodes due to dizziness from her pain mediation. (R. 37-38). Claimant regularly experiences diarrhea several times a day an hour or two after eating or, at times, unexpectedly and will be in the restroom for a half-hour to forty-five minutes at a time. (R. 40). Claimant, who weighed 267 pounds prior to the pancreatitis, began experiencing unexplained weight loss a week prior to the hearing and was losing a pound a day, down from 220 pounds to 214 pounds, and her treating doctor recommended another MRI. (R. 42). Claimant takes Creon, a digestive enzyme, which is supposed to relieve diarrhea, but it does not work. (R. 45).

6

Case 5:12-cv-00702-FL   Document 28   Filed 01/03/14   Page 6 of 14

On a typical day, Claimant gets her son ready for school and drives her children to school. (R. 29, 40). When she returns home, she starts laundry and then takes a pill and lies down. (R. 40). She may sweep or do other chores, but can only work in intervals before needing to rest. (R. 40-41). Claimant is able to help her children with homework on days when she does not need her pain medication, the side effects of which interfere with her ability to do so. (R. 29). Claimant has a twenty-eight year old daughter who lives in New York, but comes to North Carolina three or four times a year to help Claimant, particularly when Claimant has been hospitalized. (R. 38-39). Claimant does not exercise or take part in recreational activities, because she cannot be far from a restroom. (R. 42-43).

## C. Vocational Expert's Testimony at the Administrative Hearing

Theodore H. Sawyer testified as a VE at the administrative hearing. (R. 48-53). After the VE's testimony regarding Claimant's past work experience (R. 49-50), the ALJ posed the following hypothetical:

> [A]ssume a hypothetical individual of the claimant's age, education, and past relevant work. And, assume this individual is limited to ten-pounds frequently and 20-pounds occasionally. This individual can stand and/or walk about two hours in an eight-hour day, can sit about six-hours in an eight-hour day. Push and pull with the limits I have given. This individual should only occasionally climb ramps and stairs. Never ladders, ropes, and scaffolds. Occasional balance. Occasional stooping, kneeling, crouching, and crawling. This individual should be limited to only occasional reaching over hands bilaterally due to the stress that would be placed on the abdomen from that region. This individual should avoid concentrated exposures to hazards, such as heights and machinery. As a result of pain, limitations from pain, this individual would be limited to simple, routine, repetitive tasks. However, this individual would have no limitations in dealing with coworkers, supervisors, or the public. This individual could adapt to work changes.

(R. 50-51). The VE testified that such an individual would not be able to perform Claimant's past relevant work. (R. 51). However, the VE opined that there would be jobs at the sedentary level that

7

would accommodate the hypothetical individual, such as surveillance system monitor (DOT # 379.367-010), egg processor (DOT # 559.687-034), and cuff folder (DOT # 685.687-014). (R. 52-53). The ALJ also asked whether such a hypothetical person would be employable if more than three days away from work was required and maintaining a regular work pace was difficult. (R. 53). The VE opined that such a person would not be employable. *Id.*

## V. DISCUSSION

### A.     ALJ's Credibility Assessment

Claimant contends the ALJ improperly evaluated Claimant's credibility, resulting in an RFC not supported by substantial evidence, specifically that the ALJ's reasons for finding her not entirely credible are not supported by the record and that the ALJ misevaluated and misinterpreted the evidence. Pl.'s Mem. at 8-12. It is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers

8

"all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3.

Here, the ALJ found that Claimant had medically determinable impairments reasonably capable of causing some of the alleged symptoms, but concluded Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. (R. 16). In support of this conclusion, the ALJ noted that Claimant's allegations of functional limitations are not supported by the longitudinal record, i.e., the pancreas stenting had worked; on numerous occasions Claimant had denied having abdominal pain, nausea, or vomiting and she has gained weight; there have been no hospitalizations or ongoing treatment related to complications from her diabetes; there is no evidence of change in motor tone or bulk such as disuse atrophy or other change such as weight loss, which may be expected in a person whose activities are markedly restricted due to a debilitating disease process; and the evidence revealed that the pancreatic mass has gotten smaller, rather than grown as Claimant testified. (R. 16-17).

First, with respect to the ALJ's statement that the pancreas stenting had worked, Claimant

9

points out that her stents had been surgically replaced and expanded five times and concludes that it was a mischaracterization to state that she had no complications with the stents and they were working fine. However, the evidence does not support a finding that the stents were removed and replaced due to complications as Claimant suggests. Claimant testified that the stents had to be replaced every three months (R. 47-48), presumably as a matter of course, and there is no indication in the treatment notes that the stenting was not working. To the contrary, the record reflects that although Claimant had some increased pain immediately following these procedures, Claimant's condition generally improved with stenting. (R. 268-69, 272, 275-76, 362-63, 383-84, 415-16, 517-19). Claimant also contends that the ALJ erroneously assumed Claimant was pain free as a result of the stent placement. The ALJ did not find that Claimant had no pain and, in fact, determined Claimant's subjective complaints were partially credible and rejected state agency opinions that Claimant was capable of medium level work, limiting Claimant's RFC to sedentary work with the additional limitation of simple, routine, repetitive tasks "as a result of [Claimant's] pain." (R. 15-17).

Next, Claimant characterizes as specious the ALJ's statement that on numerous occasions Claimant denied having abdominal pain, nausea, or vomiting and that she had gained weight. Specifically, Claimant argues that the ALJ relied on a limited period–from late April through June 2009–during which time Claimant was relieved of her symptoms. Claimant also contends the ALJ failed to consider the side effects of her medications. Treatment records from January through November 2010, which were cited by the ALJ as Exhibit 12F (R. 16), indicate Claimant's symptoms were either reported as improved, Claimant responded to treatment, or Claimant did not complain of abdominal pain, nausea vomiting, and/or diarrhea. (R. 411-22). Claimant's medical records also

10

show that after Claimant's first hospitalization related to her pancreatitis in New York in 2005, Claimant had no further problems until 2009 (R. 273, 286), undermining her assertion that her condition has been disabling since December 2004. Moreover, Claimant's social history in an April 6, 2009 medical note by Dr. Whitt indicates that Claimant was helping care for her elderly mother at that time, which further undermines Claimant's contentions regarding the severity of her symptoms. (R. 286). To the extent the ALJ did not discuss the side effects of Claimant's medications, the ALJ is not required to expressly discuss every factor enumerated in 20 C.F.R. §§ 404.1529 and 416.929, but rather must provide "specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. The ALJ's decision satisfies this burden.

Finally, Claimant takes issue with the ALJ's finding that Claimant's body appearance had not changed due to her medical condition and points to Claimant's testimony at the administrative hearing that what appeared to be her stomach was actually her enlarged pancreas. The ALJ acknowledged that Claimant has an enlarged pancreas (R. 15), but Claimant's testimony that her pancreas was continuing to increase in size is not supported by the medical records. The ALJ cited a May 15, 2009 CT scan indicating that Claimant's pancreas had, in fact, diminished in size since April 6, 2009, in response to steroid treatment. (R. 16, 301-03). Claimant cites nothing in the medical record to contradict this finding. Furthermore, the ALJ found Claimant's testimony regarding her weight loss was not credible, citing medical records indicating that Claimant weighed 197 pounds in 2009 and weighed over 200 pounds at the time of the administrative hearing. (R. 17,

11

568).

In sum, the ALJ applied correct legal standards in assessing Claimant's credibility and the ALJ's determination is supported by substantial evidence in the record. The court's duty is to determine if substantial evidence supports the ALJ's conclusions–not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). The ALJ considered Claimant's testimony, the objective medical evidence, and the medical opinions in formulating the RFC, and limited Claimant to less than a full range of sedentary work based on her subjective complaints. Accordingly, there is no error in the ALJ's evaluation of Claimant's credibility and the resulting RFC is supported by substantial evidence.

**B.     ALJ's Assessment of Medical Opinion Evidence**

Claimant contends the ALJ erred by failing to incorporate the limitations outlined by David Propst ("Propst"), a physician's assistant at Wilson Medical Group where Claimant received primary care. Pl.'s Mem. at 12. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.* If the ALJ determines that

12

a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).

Here, the ALJ assessed Propst's February 7, 2011 opinion as follows:

> As for the opinion evidence, (Exhibit 14F) from Wilson Medical Group records by David Propst, PA-C, stated the claimant's condition could be chronic and result in frequent days away from work and make staying at a workstation or maintaining a regular work pace difficult. The undersigned finds this to be a qualified opinion, stating what may happen and not what is happening with the claimant's condition. Based on the record evidence the stents are working well for the claimant as she has noted frequently no difficulty.

(R. 16). Claimant asserts that the ALJ misunderstood Claimant's conditions, confusing the pancreatitis causing Claimant's abdominal pain and cramping with the bile duct stricture treated with stents. Yet, Propst's opinion states that treatment for Claimant's chronic pancreatitis included pancreatic stents (R. 505), and the ALJ's reference to evidence that the stents are working well for Claimant is, thus, relevant. Moreover, as discussed above, *see supra* section V.A., the ALJ did not conclude that Claimant was pain free, but acknowledged Claimant's pain associated with her chronic pancreatitis and limited Claimant's RFC to sedentary work with the additional limitation of simple, routine, repetitive tasks "as a result of [Claimant's] pain." (R. 15, 16-17). In doing so, the ALJ discounted as "not restrictive enough considering [Claimant's] subjective complaints" the state agency medical consultants' opinions concluding Claimant was capable of performing work at the medium exertion level. (R. 17, 232-39, 366-73). Finally, the ALJ did not err in characterizing

13

Propst's opinion as "qualified" where it expressly states that pancreatitis "has the potential to be chronic and *can result* in frequent days away from work and make staying at a work station or maintaining a regular work pace difficult," (R. 505) (emphasis added), and there is substantial evidence to support the ALJ's conclusion that Claimant's complaints regarding the severity of her abdominal pain and diarrhea were not entirely credible, *see supra* section V.A. Therefore, the ALJ's assessment of Propst's opinion was in accordance with the law and supported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-26] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 3rd day of January 2014.

Robert B. Jones, Jr.
United States Magistrate Judge

14